**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEVEN WILSON<br><br>      *Plaintiff*,<br><br>  v.<br><br>THOMAS WOLF,<br><br>      *Defendant*. | Case No. 2:20-cv-04560-JDW |

## MEMORANDUM

Steven Wilson gets an "A" for creativity in his challenge to the restrictions on his business that Pennsylvania Governor Thomas Wolf put in place to battle the Covid-19 outbreak. Some people petitioned the Governor, asking him to rethink some of the rules he put in place. Others asked the legislature to intervene. Still others filed lawsuits challenging the restrictions. Mr. Wilson took a different tack. He sent the Governor a bill for his losses. When the Governor failed to pay up, Mr. Wilson did the only thing he could: he sued to collect. And, he has backed his claim with inventive legal arguments. In the spirit of great Western philosophers, he contends that the Pennsylvania Constitution is a social contract that gives him a right to sue. He also invokes the Americans with Disabilities Act and the Rehabilitation Act because he claims that the Governor's restrictions disabled his business.

Mr. Wilson's grade on the legal merits is much worse, even graded on the curve that applies to *pro se* litigants. The Eleventh Amendment bars Mr. Wilson's damages claims under the Due Process Clause and 42 U.S.C. § 1983 because Mr. Wilson has sued Governor Wolf in his official capacity. He has not pled any facts to suggest that he suffers a physical or mental disability under the ADA or the Rehabilitation Act. Because Mr. Wilson gets a failing grade, the Court will dismiss his Complaint.

## I.      BACKGROUND

### A.      Pennsylvania COVID Closure Orders Close Mr. Wilson's Business

Mr. Wilson operates "Tape Me Up LLC," a sports medicine injury prevention business in Philadelphia. His business relies on athletes' participation in sporting events and outdoor athletic activities. On March 19, 2020, Governor Wolf issued an Executive Order in response to the Covid-19 pandemic that classified certain businesses as "life sustaining" and prohibited the operation of non-life-sustaining businesses. Tape Me Up did not qualify as a life-sustaining business. Then, on April 1, 2020, Governor Wolf issued another Executive Order that required Pennsylvania residents to stay at home.That order expired on June 4, 2020. The Court will refer to these Orders together as the "Covid Orders." According to Mr. Wilson, the Covid Orders shut down his business because they closed all public parks and recreation facilities and prohibited sporting events.

### B.      Mr. Wilson's Attempts To Bill The Governor

Mr. Wilson determined that Governor Wolf had to compensate him for his business losses. He charged the Governor $2,000 for each day from April 1 to June 4 (65 days) and added 6% sales tax. The total was $137,800. On July 6, 2020, Mr. Wilson mailed Governor Wolf a bill for the amount he determined the Governor owed him. He got no response, so he sent the invoice two more times. On September 15, 2020, he sent a final notice. He received no payment in response to these mailings.

### C.      Procedural History

On September 15, 2020, Mr. Wilson filed a *pro se* Complaint against Governor Wolf "in his official capacity as Governor of the Commonwealth of Pennsylvania." (ECF No. 1 at III.C.) He seeks damages for violations of his First and Fourteenth Amendment rights under 42 U.S.C.

§ 1983. On November 2, 2020, he filed a document entitled "Brief in Favor of Plaintiff Steven W. Wilson," which reads like a cross between a brief and an Amended Complaint. In it, he reasserts his Section 1983 claims. He also makes reference to a "contract controversy" for Governor Wolf's failure to pay his bill, and disability discrimination claims under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act on the theory that Governor Wolf "disabled" his business by classifying it as "non-life sustaining," thus rendering it inoperable. (ECF No. 6 at ¶ 47.) The Court treats Mr. Wilson's supplemental filing as an Amended Complaint. Governor Wolf moved to dismiss the Complaint. He argues that the Eleventh Amendment bars the Section 1983 claims and that Mr. Wilson has not stated a claim for violation of the ADA or the Rehabilitation Act.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to challenge the Court's subject matter jurisdiction. A claim of sovereign immunity, including under the Eleventh Amendment, calls into question the Court's subject matter jurisdiction and arises under Rule 12(b)(1). *See Gary v. Pa. Human Rel. Comm'n*, 497 F. App'x 223, 226 (3d Cir. 2012). "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (internal quotation marks omitted). A facial attack "concerns 'an alleged pleading deficiency' whereas a factual attack concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Id.* (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)) (alterations in original). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* (internal quotation marks omitted). If the Court is certain that assertion of

jurisdiction would be improper, it must dismiss such a case. *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).

The Court may also dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Similar to a facial challenge to subject matter jurisdiction, in ruling on a 12(b)(6) motion, the Court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and any reasonable inferences that may be drawn therefrom, and must determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) (citations omitted). A document filed *pro se* is to be liberally construed, and a Court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citation omitted). Thus, claims should be dismissed under Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## III. DISCUSSION

### A. 12(b)(1)

The Eleventh Amendment limits the "Judicial power of the United States" to prevent "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State …." U.S. Const. Amend. XI. Although the Amendment focuses on suits against a state by a citizen of a different state, the Supreme Court has held that it also bars suits by citizens of a state against their own state. *See Hans v. Louisiana*, 134 U.S. 1, 21 (1890). When a plaintiff sues a state official in his official capacity, he asserts a claim against the official's office, not the official himself. Because the claim is against an office of the state, as a matter of law it is the same

as a claim against the state itself. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 71 (1989).

State sovereign immunity under the Eleventh Amendment is subject to three exaptions: (1) where Congress abrogates the state's immunity pursuant to a valid exercise of its Fourteenth Amendmnet power; (2) where a state has waived its sovereign immunity; and (3) where a plaintiff seeks prospective injunctive relief against state officials to end continuing violations of federal law. *See MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001); *see also Ex parte Young*, 209 U.S. 123, 157 (1908); *Seminole Tribe v. Florida.*, 517 U.S. 44, 55 (1996) (citation omitted). Mr. Wilson does not seek injunctive relief here, so the exception for prospective relief cannot apply. In addition, Congress did not abrogate sovereign immunity when it adopted Section 1983.

Although Mr. Wilson argues that the Commonwealth has waived its sovereign immunity, he is wrong.  Mr. Wilson points to several Pennsylvania statutes that address sovereign immunity and argues that nothing in any statute "expressly state[s Governor] Wolf's immunity from a **Bill**." (ECF No. 6 at ¶¶ 38, 39 (emphasis in original).) But Mr. Wilson has it backwards. The Eleventh Amendment creates a blanket immunity that the Commonwealth would have to waive. The Pennsylvania Constitution declares the State's intent that officials and employees acting within the scope of their duties shall enjoy sovereign immunity except where the General Assembly provides a specific waiver of the immunity. 1 Pa. C.S. § 2310. The statutes in question, 35 Pa.C.S.A. §7704 and 62 Pa.C.S.A. § 1702, state that the Commonwealth does **not** waive its sovereign immunity except in specific circumstances that do not apply. Thus, contrary to Mr. Wilson's argument, the statute's silence means that sovereign immunity does apply.

Mr. Wilson also argues that the Commonwealth has waived sovereign immunity for contract disputes; the Pennsylvania Constitution is a "contract between Citizen and his Government;" and the social contract required Mr. Wilson to follow the Covid Orders. (ECF No. 6 at ¶ 42.) He therefore suggests that the Governor's refusal to pay his bill is really a breach of contract action. As a matter of philosophy, this might be true. *See generally, e.g.*, John Locke, Two Treatises of Government (1690). But the Court is not here to resolve philosophical disputes. It is here to resolve legal disputes, and Mr. Wilson's argument is wrong as a legal matter. The Pennsylvania Constitution is not an enforceable contract. It is an organizational document for the Pennsylvania government. Though clever, Mr. Wilson's argument does not allow him to avoid the Eleventh Amendment.

### B.     12(b)(6)

Title II of the ADA and Section 504 of the Rehabilitation Act prohibit the exclusion of "qualified individuals" with disabilities from government services, programs, or activities. *See* 42 U.S.C. § 12132; 29 U.S.C. § 794(a). Courts consider Title II and Section 504 claims together because the substantive standards for determining liability are the same. *See Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288-89 (3d Cir. 2019). To qualify for coverage under the Acts, a plaintiff must be: (1) a qualified individual with a disability; (2) precluded from participating in a program, service, or activity; (3) because of his disability. *Id.* at 288-89. Disability under both Acts is defined as a "physical or mental impairment" that "substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(1)(A); 29 U.S.C. § 706(8)(B). Mr. Wilson has not alleged any physical or mental disability. He hasn't identified any program, service, or activity in which he's been denied participation. Nor could he. His claim under these federal statutes fails as a matter of law.

IV.     **CONCLUSION**

Mr. Wilson's attempt to recover from the Governor is inventive, but it fails. The Court will give him leave to re-plead his Section 1983 claims, if he can do so in a way that is consistent with this opinion.

**BY THE COURT:**


*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON**
United States District Judge

January 27, 2021